**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RANDALL GATZ, ET. AL, | ) | |
| | ) | **Case No. 2025-CV-08864** |
| Plaintiffs, | ) | |
| | ) | **Judge Manish S. Shah** |
| v. | ) | |
| | ) | |
| THE CITY OF CHICAGO, ET. AL, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF WITHHELD MEDICAL-**
**CLEARANCE MATERIALS AND FOR LEAVE TO REOPEN LIMITED DEPOSITIONS**

Plaintiffs, RANDALL GATZ and LISA MELONE, as Guardians of MARISA GATZ, by

and through their attorneys, THE LAW OFFICE OF JULIAN JOHNSON, LLC, and FOUTRIS

LAW OFFICE, LTD., move this Court to compel production of withheld medical-clearance

materials and for leave to Reopen Limited depositions. In support of this motion, Plaintiffs state

as follow:

**INTRODUCTION**

This is Plaintiffs' third motion to compel. Plaintiffs will not repeat the full procedural

history set out in the first two. See Dkt. Nos. 25, 61. But the pattern matters. Plaintiffs have been

attempting to advance discovery for years, and has twice been forced to seek Court intervention

to obtain discovery from Defendants. Plaintiffs now bring this third motion because the City's

incomplete production has prejudiced depositions that Plaintiffs waited years to take.

The current issue concerns medical-clearance and medical-transport documents central to

Plaintiffs' claims. After years of written discovery and motion practice, Plaintiffs began taking

1

the depositions of the Defendant officers last week. During those depositions, Plaintiffs learned that the City had not produced medical-clearance paperwork, medical-run documentation, related CPD policies, Ms. Gatz's specific run sheet, and hospital discharge records. These documents concern the core issues in this case: what CPD knew about Ms. Gatz's medical condition, what medical clearance existed, what was communicated when she returned from the hospital, and what information should have accompanied her when CPD transferred her to Sheriff custody. The documents were responsive, discoverable, and necessary for the depositions Plaintiffs have already taken. The City's failure to produce them before those depositions prejudiced Plaintiffs' examination and now threatens the remaining deposition schedule. Because informal efforts have not secured the documents or even a firm production date, Plaintiffs respectfully moves to compel production and related relief.

**RELEVANT DISCOVERY AND DEPOSITION HISTORY**

1. On March 20, 2025, while this case was pending in state court, Plaintiffs served production requests on Defendants. Among other things, Plaintiffs requested:

> "Any and all documents relating to Chicago Police Department general orders, special orders, guidelines, manuals, procedural guides, rules, policies, and/or practices that were in effect on the date of the incident relating to the following topics . . . Providing and/or obtaining medical care for detainees/arrestees in custody in the Police Department."

*See* Ex. A, Plaintiffs' Initial Requests for Production, No. 31. The Defendants did not produce a medical-clearance form in response to that request. Nor did the City identify or acknowledge the existence of such a form.

2

**2.**     Plaintiffs initially noticed the depositions of Defendant officers to begin in October and November 2025. Defendants objected to those depositions proceeding after Plaintiffs amended the complaint on October 14, 2025. Plaintiffs moved to compel the depositions, and the Court denied that motion. *See* Dkt. No. 30.

**3.**     After the newly named defendants appeared and the parties again briefed motions to dismiss, Plaintiffs noticed the depositions of Defendants Robert O'Donnell, Lindy Clark, and Antoinette Thompson for April 21, 22, and 23, 2026. Their counsel objected to those dates and stated that the witnesses were available only on May 13, 14, and 15, 2026. To move discovery forward and avoid additional motion practice, Plaintiffs agreed to those dates.

**4.**     On May 13, 2026, Plaintiffs deposed Defendant Lieutenant Robert O'Donnell, the watch commander at the 25th District police station where Marisa Gatz was held when narcotics were found on her person. Plaintiff questioned Lt. O'Donnell about a CPD General Order requiring a "medical clearance form" to be included in the packet that accompanies an arrestee when custody is transferred to the Cook County Sheriff's Office. Lt. O'Donnell testified that he had never heard of that form.

**5.**     During a break in Lt. O'Donnell's deposition, Plaintiff's counsel located a CPD Medical Clearance Form on the website of the Chicago Office of Inspector General. Plaintiffs' counsel later located the same form on CPD's own directives website, linked to Special Order S04-20-05. *See* Ex. B, Medical Clearance Form Used at Depositions.

**6.**     Plaintiffs questioned Lt. O'Donnell about the form. Lt. O'Donnell denied ever seeing the form and testified that it was not a form CPD used. Defense counsel objected to Plaintiffs' use of the form and suggested that the form was not used by CPD.

7.      After Lt. O'Donnell's deposition, Plaintiffs' counsel confirmed that the Medical Clearance Form was an official CPD form and was responsive to Plaintiff's production requests. Plaintiff then emailed Defendants requesting that the form and related materials be produced before Defendant Lindy Clark's deposition. *See* Exh C, May 13, 2026 Emails from Plaintiffs' Counsel to Defendants' Counsel. Defendant Clark is one of the lockup keepers who discovered narcotics on Ms. Gatz. The City did not produce the Medical Clearance Form before Clark's deposition.

8.      Before Clark's deposition began, counsel for Clark, Thompson, and O'Donnell, Molly Boekeloo, objected to Plaintiffs' use of the Medical Clearance Form. Counsel stated unequivocally that the form Plaintiffs had used with Lt. O'Donnell was not a form CPD used. Counsel further objected to Plaintiff using the form with Clark or Thompson and stated that Defendants would object to producing those witnesses again to testify about the form because, according to counsel, Plaintiff was using the wrong form.

9.      During Clark's deposition, Plaintiffs again presented the Medical Clearance Form. Clark denied ever seeing the form and testified that it was not a form she had ever seen as a lockup keeper. Clark testified that the form used by lockup keepers was a "medical run sheet," and that the medical run sheet was not the Medical Clearance Form shown to her.

10.     Plaintiffs immediately asked counsel for the City why the medical run sheet had not been produced. The medical run sheet was plainly responsive to Plaintiff's discovery requests. Clark also testified that she completed a medical run sheet for Ms. Gatz. Yet the City has not produced Ms. Gatz's medical run sheet or even a blank copy of the form.

11.     During the same deposition, Clark referenced hospital discharge paperwork that she saw after Ms. Gatz was transported to Community First Hospital for medication for a urinary-tract

4

infection. Clark testified that she saw that paperwork. The City has not produced that discharge paperwork. Plaintiffs again promptly emailed defense counsel requesting the missing documentation. *See* Exh. D, May 14 2026 Emails to Defense Counsel.

12.     On May 15, 2026, Plaintiffs deposed Defendant Antoinette Thompson, the second lockup keeper who discovered narcotics on Ms. Gatz. Relying on defense counsel's representation that the Medical Clearance Form Plaintiff used with O'Donnell and Clark was not a CPD form, Plaintiffs did not question Thompson about that form. Thompson also referred to a medical run sheet during her deposition.

13.     At the end of Thompson's deposition, Plaintiff's counsel asked counsel for the City, Ryan Nolte, to provide a firm date for production of the outstanding documents. Counsel for the City stated that he could not provide a date because he did not know when his contact at CPD would provide the materials.

14.     On May 18, 2026, Plaintiffs sent another email to defense counsel identifying the outstanding documents and requesting production. *See* Exh. E, May 18, 2026 Email to Counsel for the City.  On May 20, 2026, counsel for the City responded that the City had requested the documents but could not say when Plaintiffs would receive them. *See* Exh. F, May 20, 2026 Email from Counsel for the City.

15.     Also on May 20, 2026, counsel for Defendants Clark, Thompson, and O'Donnell produced an image of the **exact** Medical Clearance Form Plaintiff had used during the depositions. The image appears to show the form inside the 25th District, presumably taken by Defendants Thompson or Clark. *See* Ex. G, Image of Medical Clearance Form Produced By Defendants.

16.     That production confirms the problem. The form Plaintiffs located, used, and asked about during depositions was not an irrelevant outside document. It was a CPD Medical Clearance Form—the same form that City witnesses denied recognizing and that defense counsel represented was not used by CPD. The City should have produced the form, the related policies, the medical run sheet, Ms. Gatz's specific medical run sheet, and the hospital discharge paperwork before the depositions occurred.

17.     Because those materials were not produced, Plaintiffs examined three of the main Defendants without central documents that directly bear on Ms. Gatz's medical clearance, medical transport, return from the hospital, continued detention in CPD custody, and transfer to the Cook County Sheriff's Office. Plaintiffs also relied on defense counsel's representation that the Medical Clearance Form was not a CPD form and therefore did not question Thompson about it. Plaintiffs have been prejudiced and should be permitted to reopen the affected depositions after the City produces the responsive materials.

18.     The way the depositions were defended is also relevant. Plaintiffs' counsel was questioning Defendants about their own conduct, their knowledge, CPD lockup procedures, medical-clearance requirements, and what information was or was not communicated before Ms. Gatz was transferred to Sheriff custody. These are central issues, not collateral ones. Yet Defendants objected to nearly every question Plaintiffs asked—literally.  Plaintiffs do not use "nearly every question" loosely. The objections were persistent, repetitive, and directed at even basic questions concerning chronology. Those objections did not merely preserve issues. They disrupted the examinations, consumed the limited deposition time, and compounded the prejudice caused by the City's failure to produce the very documents Plaintiffs needed to examine the witnesses fairly. Plaintiffs do not yet have the final transcripts because the

depositions just occurred, but Plaintiffs will supplement with transcript excerpts if necessary. For present purposes, the Court should understand that the missing documents were not the only impediment to fair depositions; the examinations were also defended in a manner that repeatedly obstructed Plaintiffs' ability to develop the record.

## LEGAL STANDARD

Rule 26 provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F.Supp.3d 916, 924 (N.D. Ill. 2019) ("Relevance focuses on the claims and defenses in the case, not its general subject matter"). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Courts have broad discretion in resolving such discovery disputes and do so by adopting a liberal interpretation of the discovery rules. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996); *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D. Ill. 2018). A party may compel discovery under Federal Rule of Civil Procedure 37 whenever another party fails to respond to a discovery request, or when its response is insufficient. Fed. R. Civ. P. 37(a).

## ARGUMENT

**I.     The City's Nonproduction Prejudiced Plaintiffs' Depositions and Requires Immediate Relief.**

This is the definition of prejudice. Plaintiffs finally began taking the depositions of key City witnesses after years of delay, only to learn during those depositions that the City had not produced documents central to the witnesses' testimony and Plaintiffs' claims. The missing materials are not peripheral. They concern the exact issues Plaintiffs were examining: Ms. Gatz's

medical transport, medical clearance, return from the hospital, continued detention in CPD custody, and transfer to the Cook County Sheriff's Office.

The problem worsened during the depositions. Plaintiffs questioned witnesses about a CPD Medical Clearance Form that Plaintiffs located after reviewing CPD policy. The City had not produced that form. The three Defendants then denied familiarity with it, and defense counsel represented that the form was not a CPD form used by CPD. Counsel objected to further questioning on that basis and stated that Defendants would not agree to reproduce the witnesses to address the form. Plaintiffs relied on that representation. As a result, Plaintiffs did not question Defendant Thompson about the form.

That lost opportunity matters. Thompson was one of the two lockup keepers who found the narcotics on Ms. Gatz. She was a critical witness on the very subject the form addresses: what medical-clearance process existed, what paperwork should have accompanied Ms. Gatz, what information CPD had after her hospital visit, and what should have been communicated before she was transferred to Sheriff custody. Plaintiffs were entitled to examine Thompson with the correct documents in hand and under an accurate understanding of what CPD forms existed. Instead, Plaintiffs were led to proceed under a false premise—that the Medical Clearance Form was not real, not used, and not a proper subject for examination.

The City's position cannot be reconciled with what happened next. The City told Plaintiffs it could not provide the medical-clearance materials or even give an estimated production date. Yet that same day, counsel for the officer defendants produced an image of the very Medical Clearance Form that Defendants had spent the depositions disclaiming. Not a different form. Not a substitute form. The same form Plaintiffs was told was not used by CPD.

8

And the image appears to show that form in the 25th District—the district where Ms. Gatz was held.

That is not a harmless discovery delay. It is an untenable litigation position. Defendants cannot tell Plaintiffs during depositions that a CPD form is not real, not used, and not a proper subject of questioning, while the City withholds responsive documents and co-defendants later produce the same form from the relevant district. Plaintiffs were forced to examine witnesses under a premise Defendants created and then contradicted. That is prejudice.

Nor can Defendants avoid the consequences by saying Plaintiffs eventually received an image of the form. The injury had already occurred. Plaintiffs had already questioned O'Donnell and Clark without the City's complete production. Plaintiffs had already refrained from questioning Thompson about the form based on defense counsel's representation that the form was not used by CPD. Once that representation collapsed, the only fair remedy was production of the complete medical-clearance materials and a limited reopening of the affected depositions.

Defendants should not be allowed to control discovery this way. If the City contends that CPD uses a different form, it must produce it. If CPD uses a medical run sheet instead of, or in addition to, the Medical Clearance Form, it must produce that too. If Ms. Gatz had a completed run sheet or discharge paperwork, those documents must be produced. And if Defendants' deposition position caused Plaintiffs to forgo examination on a central issue, Defendants cannot then refuse to present the witnesses for limited follow-up questioning.

## II. The City Should Be Ordered to Produce the Responsive Medical-Clearance Materials by a Date Certain.

The City's current position—that it has asked for documents but cannot provide an ETA—is not adequate. Plaintiffs cannot prepare for or take meaningful depositions while central documents remain missing and the City cannot say when it will produce them. Discovery cannot

proceed on the City's indefinite timeline, especially where the delay has already prejudiced completed depositions.

The Court should order production by a date certain. That production should include:

1. the CPD Medical Clearance Form used in November 2023;
2. any versions of the Medical Clearance Form used at the 25th District;
3. all CPD policies, procedures, directives, or training materials concerning medical-clearance forms;
4. the Arrestee Medical Run Sheet form;
5. Ms. Gatz's completed medical run sheet;
6. all CPD policies, procedures, directives, or training materials concerning medical run sheets;
7. all hospital discharge paperwork related to Ms. Gatz's November 11, 2023 transport to Community First Hospital;
8. any paperwork provided by the hospital to CPD;
9. any paperwork CPD provided to the hospital;
10. any paperwork provided by CPD to the Cook County Sheriff's Office concerning Ms. Gatz's medical condition, medical clearance, hospital transport, discharge, or drug-ingestion issue; and
11. any document reflecting that medical-clearance information was included in the packet sent with Ms. Gatz when she was transferred to Sheriff custody.

If the City contends that any of these documents do not exist, were not preserved, cannot be located, or were never created, it should be required to say so in writing through a sworn declaration. The declaration should identify who searched, what was searched, when the search occurred, what databases or physical locations were reviewed, and why any responsive document cannot be produced.

### III. Plaintiffs Should Be Permitted to Reopen the Affected Depositions.

The Court should also permit Plaintiffs to reopen the depositions of O'Donnell, Clark, and Thompson for limited questioning. This is not a request for a second bite at the apple. Plaintiffs were deprived of the first fair opportunity to examine those witnesses on medical-clearance issues because the City had not produced responsive documents and because defense counsel took the position that the form Plaintiffs located was not used by CPD.

10

The need to reopen the depositions is especially clear as to Thompson. Thompson was not questioned about the Medical Clearance Form because Plaintiff relied on defense counsel's representation that the form was not a CPD form. That reliance was reasonable at the time. Plaintiff should not be penalized for accepting defense counsel's representation during deposition, particularly after later production showed that the premise was wrong.

O'Donnell and Clark should also be reopened. O'Donnell was questioned as the watch commander without the complete medical-clearance documents. Clark was questioned as a lockup keeper and testified about a different document—the medical run sheet—that the City had also failed to produce. Once the City produces the responsive materials, Plaintiff is entitled to examine these witnesses about the documents, their use, their relationship to CPD policy, whether they existed for Ms. Gatz, and whether they were transmitted to the Sheriff.

The reopened depositions should be at Defendants' expense. Plaintiff already incurred the time and cost of preparing for and taking these depositions once. The need to reopen them was caused by Defendants' failure to produce responsive documents before the depositions and by the deposition position that the Medical Clearance Form was not a CPD form. Plaintiffs should not bear the costs of curing a prejudice Defendants created. Defendants should therefore be ordered to pay the reasonable costs associated with the reopened depositions, including court-reporter fees, transcript costs, videographer fees if applicable, and any witness-related fees caused by the reopening.

**WHEREFORE**, Plaintiffs respectfully requests that this Court enter an order compelling Defendants to produce the outstanding documents and materials identified in this motion by a date certain; requiring Defendants to certify their search efforts and identify any responsive materials that do not exist or cannot be located; permitting Plaintiff to reopen the affected

11

depositions for limited questioning; requiring Defendants to bear the reasonable costs caused by the reopened depositions; and granting any further relief the Court deems just and appropriate.

**Dated**: May 24, 2026

Respectfully Submitted,

*/s/ Julian Johnson*
One of Plaintiffs' Attorneys

Julian Johnson
THE LAW OFFICE OF JULIAN JOHNSON, LLC
125 S. Wacker Dr, Ste. 300
Chicago, IL 60606
(312) 487-171, Telephone
(312) 300-4029, Facsimile
julian@julianjohnsonlaw.com

Basileios Foutris
FOUTRIS LAW OFFICE, LTD.
53 West Jackson Blvd, Ste. 352
Chicago, IL 60604
(312) 212-1200, Telephone
bfoutris@foutrislaw.com

## CERTIFICATE OF SERVICE

The undersigned, attorney of record herein, hereby certifies that on May 24, 2026, the foregoing **PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF WITHHELD MEDICAL-CLEARANCE MATERIALS AND FOR LEAVE TO REOPEN LIMITED DEPOSITIONS** was electronically filed with the Court's electronic filing system, which will serve notification of the filing by email to all counsel of record.

*/s/ Julian Johnson*

12