**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

RANDALL GATZ and LISA MELONE,
Guardians of Marisa Gatz,

           Plaintiffs,

      v.

CITY OF CHICAGO, a Municipal
Corporation, et al.,

           Defendants.

No. 25 CV 8864

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Marisa Gatz was arrested by the Chicago Police Department. While she was in police custody, defendants found 27 pills of MDMA, commonly known as ecstasy, inside Gatz's vagina. The pills were confiscated and inventoried, but no one sought medical care for Gatz. Hours later, she was taken to the Cook County Courthouse for arraignment, where she went into cardiac arrest. Gatz was suffering from the effects of a drug overdose and still had an ecstasy pill inside of her. Now cognitively impaired, Marisa Gatz is under the guardianship of her parents, Randall Gatz and Lisa Melone. They sued the City of Chicago and several municipal employees under state law for causing Gatz's injuries. The Circuit Court of Cook County dismissed the complaint for failure to state a claim, and plaintiffs filed a First Amended Complaint adding federal claims against the officers. Defendants then removed the case to federal court. Plaintiffs filed a Second Amended Complaint naming more individual defendants, and all defendants move to dismiss for failure to state a claim upon which relief can

be granted. Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, the motion to dismiss is denied.

## I.  Legal Standards

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When analyzing the sufficiency of a complaint, I construe it in the light most favorable to the plaintiffs, accepting all well-pleaded facts as true and drawing all inferences in their favor. *Atlanta Gas Light Co. v. Navigators Ins. Co.*, 164 F.4th 1038, 1046 (7th Cir. 2026). Legal conclusions, however, are "not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

Rule 8(a) "does not demand detailed factual allegations, but it does require more than mere 'labels and conclusions,' or a 'formulaic recitation of the elements of a cause of action.'" *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 494–95 (7th Cir. 2025) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 495 (citing *Iqbal*, 556 U.S. at 678). Put another way, the complaint must "present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

## II.    Facts

In November 2023, Marisa Gatz was arrested by Chicago Police Officers on an outstanding warrant. [28] ¶ 3.[1] Those officers transported Gatz to a police station where she complained of needing medical attention for a urinary tract infection. [28] ¶ 3–4. She was taken to Community First Hospital for treatment and then returned to lockup a few hours later. [28] ¶ 5.

Less than two hours after returning from Community First Hospital, Chicago police personnel Lindy Clark and Antoinette Thompson discovered that at least 27 ecstasy pills were in Gatz's vagina. [28] ¶ 7. Clark and Thompson immediately informed other police personnel Richard Corona, Jose Rodriguez, Robert O'Donnell, Dave M. Scafidi, Mark J. Flis, Darryl Corter, R. W. LeClair, Diane S. Piccolo, J. Ferraro, Quinta Jefferson, Mark Easterwood, Carlos O. Segovia, R.J. Rentner, and Danielle Hagen about the pills. [28] ¶ 9. At that time, none of those individuals (now all defendants here) sought any medical evaluation or treatment for Gatz. [29] ¶ 9. Instead, they completed arrest reports and other documents necessary to prosecute Gatz for possessing ecstasy. [28] ¶ 12.

That same day, defendants transferred Gatz to the Cook County Sheriff's Office for transport to her court proceedings. [28] ¶ 14. Defendants did not alert anyone with the Cook County Sheriff's Office, or anyone else, about the ecstasy discovered inside Gatz. [28] ¶ 15. Hours later, while in lockup at the Cook County

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the operative Second Amended Complaint, [28].

Courthouse following her bond hearing, Gatz went into cardiac arrest. [28] ¶ 17. She was then transported to the hospital where it was discovered that she had suffered the effects of a drug overdose and had an additional ecstasy pill in her vagina. [28] ¶ 17. Because of injuries suffered from her cardiac arrest, Gatz now has cognitive damage and will require 24-hour care for the rest of her life. [28] ¶ 18.

### III. Analysis

#### A. Federal Claims

The Second Amended Complaint includes four counts brought under 42 U.S.C. § 1983: claims against all individual defendants for failure to provide medical care, for failure to intervene, and for failure to protect, and another against O'Donnell alone for supervisory liability. Section 1983 "provides a remedy for violations of federal rights committed by persons acting under color of state law." *First Midwest Bank ex rel. Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). To state a claim under § 1983, plaintiffs must show (among other things) that Gatz was "deprived of a right secured by the Constitution or federal law." *Hadley v. City of S. Bend, Ind.*, 154 F.4th 549, 552 (7th Cir. 2025) (quoting *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006)).

There is a difference between a constitutional tort and a theory of liability. A constitutional tort arises when someone has their rights violated, while a theory of liability is a legal basis for holding someone responsible for an underlying rights violation. Here, plaintiffs have alleged two (overlapping but distinct) violations of Gatz's rights under the Due Process Clause of the Fourteenth Amendment: failure to provide needed medical care, and failure to protect from an unreasonable risk of

4

harm. Plaintiffs' other two federal counts—failure to intervene and supervisory liability—are not so much standalone claims as they are vehicles by which defendants can be held accountable for an underlying constitutional violation.

Pretrial detainees, as contrasted to those serving prison sentences after a finding of guilt, "remain entitled to the presumption of innocence, and so the Constitution protects them from any *punishment* for the acts that led to their detention." *Kemp v. Fulton Cnty.*, 27 F.4th 491, 495 (7th Cir. 2022) (emphasis in original). Accordingly, a claim concerning the conditions of a pretrial detainee's confinement "arises under the Due Process Clause of the Fourteenth Amendment, which is governed by an objective standard." *Id.*; s*ee also Pittman ex rel. Hamilton v. Madison Cnty., Ill.*, 108 F.4th 561, 570 (7th Cir. 2024) ("*Pittman IV*") (applying the Fourteenth Amendment to a pretrial detainee alleging deliberate indifference to medical needs).

To state a claim for failure to provide medical care under the Fourteenth Amendment, plaintiffs must allege, in addition to causation and harm, "that the defendants did not take reasonable available measures to abate the risk of serious harm to [Gatz], even though *reasonable officers under the circumstances would have understood the high degree of risk involved*, making the consequences of the defendants' conduct obvious." *Pittman IV*, at 572 (emphasis in original); *Zemlick v. Burkhart*, 164 F.4th 1004, 1010 (7th Cir. 2026). In other words, I ask whether the allegations support a reasonable inference "that the officers *recklessly disregarded* a risk so obvious that they either knew or should have known of it." *Lawler ex rel.*

5

*Lawler v. Hardeman Cnty., Tenn.*, 93 F.4th 919, 927 (6th Cir. 2024) (emphasis in original).

The elements of a failure-to-protect claim under the Due Process Clause of the Fourteenth Amendment are similar to the requirements for a medical-care claim. Failure to protect requires that:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Kemp*, 27 F.4th at 496 (quoting *Castro v. Cnty. of Los Angeles*, 833 F,3d 1060, 1071 (9th Cir. 2016) (en banc)). When the intentional decision respecting the plaintiff's confinement is a choice not to provide medical care, the two claims are functionally identical. *Cf. Zemlick*, 164 F.4th at 1010 (assessing a claim "for deliberate indifference to medical needs" under a framework for "pre-trial conditions of confinement").

The Second Amended Complaint alleges that, after discovering the pills in her vagina, defendants did not seek medical attention for Gatz, held her while completing paperwork for her arrest, and allowed Gatz to be transferred to the Cook County Sheriff's Office for transport to her court proceedings. At the Cook County Courthouse, Gatz went into cardiac arrest. Reading the complaint in the light most

favorable to plaintiffs, a reasonable officer, upon discovering direct internal exposure to such a large amount of drugs, would have understood the high risk of overdose. The consequences of inaction would be obvious, and defendants took no action. That is sufficient to state a claim under § 1983.

Plaintiffs allege that all sixteen individual defendants here violated Gatz's constitutional rights by failing to provide her with needed medical care. Defendants argue that those allegations in the Second Amended Complaint are impermissible "group pleading" that runs afoul of Rule 8. "There is no 'group pleading' doctrine, *per se*, that either permits or forbids allegations against defendants collectively; 'group pleading' does not violate Fed. R. Civ. P. 8 so long as the complaint provides sufficient detail to put the defendants on notice of the claims." *Robles v. City of Chicago*, 354 F.Supp.3d 873, 875 (N.D. Ill. 2019) (cleaned up).

While the complaint is light on details, there is no confusion as to what plaintiffs are accusing defendants of. Ecstasy was found in Gatz's vagina, all defendants knew about it, none of them did anything to protect her from the danger posed by those pills, and that violated her rights under the Due Process Clause of the Fourteenth Amendment. Discovery may reveal that not all defendants had personal knowledge or involvement, but I must treat the allegations in the complaint as true. Plaintiffs and their counsel (with obligations under Federal Rule of Civil Procedure 11) are asserting that each defendant committed the constitutional violation. The events occurred over a limited time, and a reasonable inference from the complaint is that each defendant was on duty performing their assigned functions, putting them

7

in a position to provide medical care to Gatz and protect her from unreasonably risky conditions. To ultimately prevail on their claims, plaintiffs will need to provide evidence to support that inference, but each defendant is adequately on notice.

Generally, "the Constitution creates only negative duties for state actors." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). "However, under certain circumstances a state actor's failure to intervene renders him or her culpable under § 1983."[2] *Id.* Failure to intervene is not itself a standalone constitutional tort but is instead a way of holding a state actor liable for some underlying rights violation. *See Rosado v. Gonzalez*, 832 F.3d 714, 718 (7th Cir. 2016) (quoting *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005)) ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation."). To establish liability under a failure-to-intervene theory, plaintiffs must demonstrate that the defendants "(1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it." *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017).

Failure to intervene is somewhat of an awkward fit for the underlying claims here. The allegation is that defendants failed to intervene in other defendants' failure to provide medical care. Any set of facts where a state actor both knew that a detainee was not being provided with medical treatment required by the Fourteenth

---

[2] Because vicarious liability is inapplicable to § 1983 suits, *see Iqbal*, 556 U.S. at 676, the failure-to-intervene theory is not without its critics. *See Mwangangi v. Nielsen*, 48 F.4th 816, 834–35 (7th Cir. 2022) (Easterbrook, J., concurring). The Court of Appeals continues to apply the failure-to-intervene test from *Yang*. *See Doxtator v. O'Brien*, 39 F.4th 852, 864–65 (7th Cir. 2022).

Amendment and had a realistic opportunity to prevent that dereliction is likely going to support a direct claim for failure to provide medical care. Still, plaintiffs are permitted to plead alternate theories of liability, Fed. R. Civ. P. 8(d)(2), and discovery may yield a set of facts that distinguishes between the two. As a matter of federal pleading, a claim for failure to intervene is duplicative of the underlying constitutional tort and is not a cause of action. But dismissal of Count V of the Second Amended Complaint would not affect the theories of recovery available to plaintiffs or the scope of discovery. Read in its entirety the complaint, which unnecessarily labels "failure to intervene" as a count, adequately puts defendants on notice of a plausible claim for relief.

Defendant O'Donnell has not moved to dismiss the claim for supervisory liability against him, so it also must survive. Even if he had, the claim is adequately pled. For supervisory liability to attach "the supervisor must have been personally involved in the constitutional violation" and "the supervisor must have also had the necessary state of mind." *Bostic v. Murray*, 160 F.4th 831, 841 (7th Cir. 2025). The complaint alleges that O'Donnell participated in the conduct and acted in an objectively unreasonable manner; it therefore states a claim for liability.

### B.    State Claims

Plaintiffs also bring four claims under state law: one against all defendants for willful and wanton conduct, and claims against the City of Chicago for failure to train, failure to supervise, and indemnification of its employees. The City does not argue that the allegations in the Second Amended Complaint fail to state a claim—rather,

9

it argues that the Illinois Tort Immunity Act protects it from suit.[3] *See* [33]; [66]. The individual defendants largely repeat and incorporate by reference the City's immunity arguments, but they also challenge the sufficiency of the state-law claim brought against them.

Immunity is generally not appropriate grounds for granting a Rule 12(b)(6) motion. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). That is because plaintiffs are not required to plead around affirmative defenses. *Id.* Dismissal based on immunity, as with any affirmative defense, is only appropriate when it is clear on the face of the complaint that the immunity applies. *Id.*

All defendants argue that they are entitled to immunity from liability for failure to make an examination, 745 ILCS 10/6-105, failure to provide detention facilities or supervision, 745 ILCS 10/4-103, and failure to furnish medical care, 745 ILCS 10/4-105. *See* [32]; [33]; [48]. In their response, plaintiffs state that they "do not fault the Defendants for failing to examine [Gatz]—nor do they imply that they are seeking to hold them responsible for such acts or omissions." [56] at 10. The immunity does not apply if plaintiffs are not trying to hold defendants liable for injuries caused by a failure to perform an examination. But plaintiffs may not argue

---

[3] Immunities created by state statute have no effect on § 1983 claims. *Haywood v. Drown*, 556 U.S. 729, 736 n.5 (2009).

later that Gatz was in any way injured by defendants' failure to perform an examination.[4]

Section 4-103's immunity from claims for injuries arising out of failure to provide a jail, detention or correctional facility, or sufficient equipment, personnel, supervision or facilities therein is also inapplicable. The scope of the immunity covers "failure to adequately provide for and supervise the facility." *Jefferson v. Sheahan*, 279 Ill.App.3d 74, 76 (1st Dist. 1996). The allegations in the Second Amended Complaint are not about the facility—they are about medical attention Gatz had a right to receive while in custody. That more appropriately falls within the scope of § 4-105.

But § 4-105's immunity for failure to furnish or obtain medical care is also not applicable on the face of the complaint. Unlike the other immunities defendants invoke, § 4-105 includes an express exception whereby the immunity shall not apply if "the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, *through willful and wanton conduct*, fails to take reasonable action to summon medical care." 745 ILCS 10/4-105 (emphasis added). The Second Amended Complaint alleges that defendants willfully and wantonly failed to summon medical care. [28] ¶ 37. Whether that exception applies is a factual question inappropriate for resolution on a motion to dismiss.

---

[4] Plaintiffs also disclaim any theory that defendants should have conducted a search of Gatz's body cavities. [57] at 10–11. As a result, no such theory or argument can be raised in this litigation.

11

The City alone argues that it is entitled to immunity from liability for injuries resulting from acts or omissions in determining policy or exercising discretion. 745 ILCS 10/2-201. For discretionary immunity to apply, the "defendant must establish that (1) the employee held either a position involving the determination of policy *or* a position involving the exercise of discretion and (2) the employee engaged in *both* the determination of policy *and* the exercise of discretion when performing the act or omission from which the plaintiff's injury resulted." *Andrews v. Metro. Water Reclamation Dist. of Greater Chi.*, 2019 IL 124283, ¶ 27 (emphasis in original). Plaintiffs do not allege that any City policy caused Gatz's injuries—they allege that the defendants failed to perform preexisting duties. *See* [28] ¶ 10. Section 2-201 does not immunize that conduct.

Since the complaint does not establish defendants' entitlement to immunity, that only leaves the sufficiency of the claim for willful and wanton conduct. "There is no separate, independent tort of willful and wanton conduct. Rather, willful and wanton conduct is regarded as an aggravated form of negligence." *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Directors*, 2012 IL 112479, ¶ 19 (citations omitted). "In order to recover damages based on willful and wanton conduct, a plaintiff must plead and prove the basic elements of a negligence claim—that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was a proximate cause of the plaintiff's injury." *Id.*

Given that the complaint states § 1983 claims that require more than mere negligence, the adequacy of those claims necessarily means that a state-law

12

negligence claim has been pled. Under Illinois law, a "jailer owes a general duty of due care to his prisoner." *Dezort v. Village of Hinsdale*, 35 Ill.App.3d 703, 708 (2d Dist. 1976). Assuming the allegations of the complaint to be true, defendants' failure to provide medical care breached that duty, and that breach proximately caused Gatz's injuries. That is all that is required to survive a motion to dismiss.

## IV.     Conclusion

Defendants' motions to dismiss, [32], [33], [48], are denied.


ENTER:

_____
Manish S. Shah
United States District Judge

Date: June 15, 2026

13